## REECE et al. v. UNITED STATES.
### No. 10161.

Circuit Court of Appeals, Fifth Circuit.
Oct. 31, 1942.

Writ of Certiorari Denied Feb. 1, 1943.

See 63 S.Ct. 529, 87 L.Ed. —.

Clint W. Hager and J. F. Kemp, both of Atlanta, Ga., for appellants.

Lawrence S. Camp, U. S. Atty., and Harvey H. Tisinger, Asst. U. S. Atty., both of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The appellants were convicted of conspiracy to violate the internal revenue laws against possessing and operating unlawful stills, against carrying on the business of liquor dealers without paying the tax, against removing and concealing tax unpaid distilled spirits, and in unstamped packages. The main errors argued are the overruling of a demurrer, of a motion in arrest of judgment, and a motion for instructed verdict.

The indictment contains fifteen counts. Those numbered 1 to 14 inclusive charge offenses other than conspiracy. Since there was acquittal on those counts, their sufficiency need not be examined.

The unnumbered conspiracy count is long and subject to criticism. Of the forty-two overt acts charged a number are acts of the officers and of third persons, or mere sayings of a conspirator after arrest. These could not be things done pursuant to the conspiracy and to effect the object of it. But there are many overt acts well charged which will support the count. It is good against demurrer.

■ The motion in arrest arises thus: Taking the face of the strict record alone, we find an indictment against seven persons containing, as has been said, fifteen counts, one for conspiracy and others numbered 1 to 14, to all of which pleas of not guilty are entered. The verdict reads: "We the jury find Leemon Reece guilty, James Dewey Hipp guilty, Jeffie Homer Heffner not guilty, John Kenny Evans not guilty, Frank Clifford Reece not guilty, Clarence Olden Evans not guilty, James Lester Kincaid not guilty. This the 28th day of October, 1941. Ben J. Massell, Foreman. We the jury find all the defendants not guilty as to counts first through fourteen. This October 28, 1941." It is argued that there are two contradictory verdicts, and that no lawful sentence can be imposed on Leemon Reece and James Dewey Hipp. Verdicts are to have a reasonable construction. The legal intendment of the first part of the verdict, which specifies no count, is to find Reece and Hipp guilty as charged, that is on all counts, and the others not guilty on all counts. The second part of the verdict is confined to the counts numbered First through Fourteen, and finds no guilt as to any one. It does not purport to apply to the conspiracy count which is not numbered in the indictment. It does not contradict the first part of the verdict in so far as the first part finds guilt on the conspiracy count. If we go beyond the face of the strict record and look at the recitals of the judge in his order overruling the motion, and of the bill of exceptions as to what really occurred, we learn that the finding of no guilt on counts numbered 1 to 14 was by direction of the judge, and that only the conspiracy count was submitted for the decision of the jury, so that the first part of the verdict is the only part they really made, and it was intended to apply only to the conspiracy count. It would have been better to have the jury to correct it so as to confine it expressly to that count; but we think that neither on the face of the strict record nor under the circumstances appearing otherwise can there be any doubt that Reece and Hipp were found guilty of the conspiracy. The motion in arrest of judgment was properly overruled.

■ As to the sufficiency of the evidence, the theory of the prosecution was that Reece, who kept a filling station and a country store, and who had a truck which Hipp drove, furnished the brains and the money and the materials for an extensive distilling business done by a number of illicit stills not very far from his store, using the truck to haul the materials; the other defendants being employed to run the stills and sell the whisky. There was no direct evidence of such a conspiracy. There was evidence that a number of illicit stills were run at about the same time within a radius of about three miles, all of a similar and rather peculiar construction, and that hundreds of gallons of untaxed whisky were made and sold, some to a federal officer masquerading as a rum runner. The 'stillers did not act like competitors, but would guide the purchaser from place to place until the desired whisky was found. Reece, who kept only a small stock of sugar at his store, had bought for cash in Atlanta during a few months thirty to forty tons of sugar, besides some meal and yeast, Hipp hauling most of it in the truck but Reece hauling some. Most of the sugar was in 100 pound sacks. Hipp and Reece used assumed names in buying the sugar, and changed the license plates on the truck during the year, the number on these plates being noted by the sellers as well as the names of buyers, to be reported by them according to regulations to the Alcohol Tax Unit. The Unit served both Reece and Hipp with a requirement that their sales of sugar be reported, but no answer was made. Reece testified it was because he sold no 100 pound lots of sugar. The disguised officer and his companion testified to numerous conversations with Reece which showed familiarity of Reece with the stills, and the whereabouts of the operators and of the whisky, and that Reece, after witness said $1.00 per gallon was too high, told him to tell the boys to let him have whisky at 90 cents, at which latter price whisky was afterwards sold. He, corroborated by his companion, also testified to Hipp's having sold and delivered one lot of liquor and sent by them a message to Reece that they needed

at the still 1,000 pounds of sugar at once, to which message Reece responded that he would go and see about it. Further that Reece had said that the use of Tennessee license plates on the car of witness was a bad thing and he would get for him some Georgia license plates, and later told Hipp to get them in Atlanta because he, Reece, had forgotten them. Reece also told witness to come for liquor between 2 and 4 o'clock A. M., and on one occasion went along to get it. Numerous incriminating admissions of Hipp were testified to. Although Hipp and Reece took the stand and denied most of these circumstances, and their guilt, the credibility of the witnesses was for the jury. We think the circumstances, if believed, were such as to warrant a submission to the jury of the question whether a conspiracy existed, and whether Reece and Hipp were parties to it.

The evidence finally left before the jury was all relevant to the issues to be tried. The cross-examination of the disguised officer was such as to indicate that a contention of "entrapment", so called, was to be raised and justified on redirect examination his testimony that he had disguised himself and undertaken to buy liquor in that vicinity by orders of his superiors in the Internal Revenue Department on information that numerous violations of the Revenue Laws were in progress there. The cross-examination of another defendant, by way of impeachment, as to a former conviction of crime, if error, did not prejudice appellants. The witness was acquitted, and he testified to nothing either for or against appellants.

No error appears. The judgment is affirmed.