UNITED STATES of America, Appellee,

v.

George MILLS, Alias "Big George", Lucille Mills and Lawrence Dunlop. Lawrence Dunlop, Appellant.

No. 13561.

United States Court of Appeals Third Circuit.

Argued June 9, 1961.

Decided July 14, 1961.

Louis C. Glasso, Pittsburgh, Pa., for appellant.

Hubert I. Teitelbaum, U. S. Atty., W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

HASTIE, Circuit Judge.

The appellant, Lawrence Dunlop, has appealed from a conviction under one count of an indictment which charged that he and two other persons "did fraudulently and knowingly conceal, sell and facilitate the concealment and sale of a certain narcotic drug, to wit, approximately thirty-five (35) grams and eight hundred (800) milligrams of * * * heroin, a derivative and preparation of opium, to Robert H. Brown, which said narcotic drug had been imported and brought into the United States contrary to law; the said defendants knowing said narcotic drug to have been imported and brought into the United States as aforesaid; in violation of Section 174 of Title 21 of the United States Code". Though the appellant and a second defendant, George Mills, were both convicted under this count there was no charge of conspiracy and the defendants were involved in different ways. The evidence indicated that Mills sold the heroin in question, but, as the court below recognized in submitting the case to the jury, the most that could be said about Dunlop was that he "facilitated" the sale.

The brief record consists of the testimony of the government agents who participated in or observed the relevant transactions. Early in the afternoon in question Robert Brown, who was a narcotics offender serving as a "special employee" of the Bureau of Narcotics, and a regular agent came to Mills' residence where Brown negotiated with Mills for the purchase of narcotics. The only evidence of Dunlop's involvement at this time appears in the following testimony by Brown:

"I walked on up the driveway and went up there and gave the money to George Mills. He counted the money out on the table and told Lawrence Dunlop to go and pick up the stuff. The stuff was laying in the yard. Just at the time that he started to go out the door to get the stuff, Lucille ran back in the house and told George, said, 'Where is Harry?' That is me. That is what he called me; Harry. She said, 'Where is Harry? That man with Harry is acting very funny. He is out there at the end of the driveway peeping around the corner,' and I said, 'No, he ain't acting funny.' I said, 'He is just probably following his money,' and she said, 'Well, don't do no business with Harry with that man standing out there like that. Give him the money back.' So, George took the money out of his pocket and laid it on the table and said he would get in touch with me later * * *."

There is no other comment upon or explanation of the presence of Dunlop on that occasion.

Later during the same afternoon Brown made two unsuccessful efforts to reach Mills at home by telephone. The second call was answered by Dunlop. Concerning the conversation which ensued Brown testified: "I told Lawrence [Dunlop] to tell George to call me as soon as he got back home, that I was going home." Brown had made a similar request of appellant just outside of Mills' house shortly after the first unsuccessful effort to buy heroin. About six-thirty the same afternoon Mills did call Brown. As a result of their conversation Brown came again to Mills' residence that evening to purchase heroin. Mills was sitting in front of the building. Brown gave him five hundred dollars. Mills then directed Brown to look behind the door of a nearby vacant building. Brown did so and there found a package of heroin which he picked up and took away with him. Dunlop took no part in this

transaction, although the testimony is that he was on the sidewalk nearby while Brown and Mills consummated the sale.

The point principally argued by both parties on this appeal has been the question whether there was sufficient evidence that Dunlop knowingly "facilitated" the sale by Mills to Brown. However, we do not reach this point because we find no proof of another essential element of the crime.

The statute makes it a crime to sell or facilitate the sale of any "narcotic drug after being imported or brought in, knowing the same to have been imported * * * contrary to law". 21 U.S.C.A. § 174. In this case the government failed to establish that Dunlop knew that the heroin sold by Mills had been unlawfully imported, or indeed that there had been any unlawful importation.

In a number of cases where sellers have been convicted, an inference of illegal importation and knowledge thereof has been drawn from the fact that the seller had possession of the contraband. E. g., Velasquez v. United States, 10 Cir., 1957, 244 F.2d 416; United States v. Pinna, 7 Cir., 1956, 229 F.2d 216. Indeed, the statute itself provides that "whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." But here there is simply no showing that appellant ever had possession of the heroin which Mills sold to Brown.

We are not unmindful of our own decision in United States v. Malfi, 3 Cir., 1959, 264 F.2d 147, certiorari denied 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63, and similar decisions elsewhere. E. g., United States v. Cox, 2 Cir., 1960, 277 F.2d 302. Those, however, are cases in which the accused was shown to have been at least a moving party in the sale at whose direction some third person delivered narcotics. Although it was not established that the accused physically handled the contraband, his possession was said to have been sufficiently proved by evidence indicating that he had exercised control or dominion over it. The most tenuous inference of possession which any appellate court has sanctioned in the cases in this line which we have examined appears in Cellino v. United States, 9 Cir., 1960, 276 F.2d 941, 946. There the defendant, asked to sell narcotics, took the prospective purchaser to another man, vouched for his reliability as a supplier and was physically present when that man handed the narcotics to the purchaser. In those circumstances the court found sufficient "circumstantial evidence of dominion and control" exercised by the defendant. We think that case goes as far as reason and fairness permit in inferring dominion and control. In the present case it would be necessary to go farther. Though Dunlop obviously had some connection, we may suspect a sinister one, with Mills and was actually standing by when the sale was made, he never took any initiative or directed any action which might enable a fact-finder to conclude that he was exercising dominion or control over the heroin which Mills sold to Brown.

Apart from the presumption which depends upon possession, there is no direct or circumstantial evidence whatever in this record which tends in any way to show that the heroin, which was actually introduced into evidence, had in fact been illegally imported, much less that Dunlop knew of such importation.

We conclude, therefore, that the court below should have directed, and we must now direct, the acquittal of the appellant because the government failed to prove an essential element of the crime as defined in the statute.

The judgment will be reversed.