Eugene WALKER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18883.

United States Court of Appeals
Fifth Circuit.

March 20, 1962.

Rehearing Denied May 11, 1962.

Thomas M. Haas, Mobile, Ala., for appellant.

Alfred P. Holmes, Jr., Asst. U. S. Atty., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., for appellee.

Before RIVES and WISDOM, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge.

Appellant Walker and one Freddie Lee Sigler were indicted in two counts for alleged violations of narcotics laws, 26 U.S.C. § 4704(a).[1]

Walker appeals his conviction following jury trial on the grounds (1) that the Court erred in failing to grant the motion for judgment of acquittal at the close of the Government's case; (2) that the Court erred in its refusal to grant his requested charge "I charge you, * * that if you believe the evidence, you must find the defendant not guilty."; (3) that the Court erred in admitting into evidence certain testimony of a Government narcotics agent; (4) that the Court erred in its charge to the jury on the question of entrapment.

Specifications one and two above in effect require this Court to determine the sufficiency of the evidence to support the jury's verdict.

■■ It is basic that in consideration of the sufficiency or insufficiency of the evidence to support the verdict, we cannot weigh the evidence or test the credibility of the witnesses. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ The facts established by the evidence viewed in its aspects most favorable to the Government, are that on April 26, 1960, a Federal narcotics agent went to appellant's grocery store in the City of Mobile, Alabama, having had information which led him to believe that appellant would be dealing in narcotics. He assumed a false identity and approached appellant for the purpose of purchasing narcotics from him. The agent and appellant negotiated the sale of one teaspoonful of narcotics on that day, and the discussions which they had were relative to the amount of narcotics to be delivered later that day, as well as in the future, the price, and the method of delivery. The agent paid appellant one hundred dollars for the teaspoonful. Appellant and Sigler completed the transaction by leading the agent to a telephone booth and showing him where the narcotic was taped to a ledge. The agent removed the narcotic from the booth and took it to the car where appellant and Sigler waited. The agent there opened the package, and upon viewing the contents, expressed doubt that he was getting sufficient amount for his money. He was assured by appellant and Sigler that the narcotic was pure and undiluted.

Prior to the time of the delivery, appellant, for some reason which is not clear, returned the one hundred dollars to the agent, but later in appellant's presence the agent paid that amount to Sigler.

On May 6, 1960, the agent again went to appellant's store for the purpose of purchasing two more ounces of the narcotic, as had been arranged previously.

Appellant told the agent that he could arrange for sale of two snuff cans, one completely full of cocaine, and the other only half full. Since this amount was less than the two ounces agreed upon previously, Walker made an adjustment on the price originally quoted. Sigler was present during this conversation.

1.  Packages—"(a) General Requirement.— It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found.

"(b) Exceptions in case of registered practitioner.—The provisions of subsection (a) shall not apply—* * *."

The three of them agreed to meet later that night for the purpose of effecting delivery.

That evening the agent met with appellant and Sigler in a night club, and Sigler accompanied the agent to get the one and a half ounces of cocaine. It would unduly prolong this opinion to recite ·the route taken, and the furtive events leading up to the ultimate delivery of the cocaine. Upon Sigler's delivering the cocaine, the agent, and a detective who had concealed himself in the trunk of the agent's vehicle, placed Sigler under arrest. Appellant surrendered four days later and was placed under arrest.

The testimony of Government experts substantiated the agent's testimony that the snuff cans contained cocaine. The cans themselves were introduced into evidence, as were the envelopes in which the agent sealed the narcotic that was sent to the Treasury Department chemist for analysis.

On these facts, then, we are urged to conclude that the evidence was insufficient to support the jury's verdict. Appellant urges that the evidence was insufficient in that he did not sell any narcotic, nor aid and abet, counsel, command, or induce or procure the commission of the offense since it was Sigler who sold and delivered the narcotic to the agent.

■ The evidence is uncontradicted in any respect that appellant brought the agent and Sigler together for both transactions. On both occasions he was present and participated in the arrangements which led to the sale of the cocaine. He quoted the prices, he contacted Sigler, who on one occasion led the agent directly to the telephone booth where the cocaine was placed, and on the second occasion it was Sigler who handed the cocaine directly to the agent.

We cannot say that the jury could not have found that Walker and Sigler were acting in concert, or that Walker aided and abetted Sigler in the illegal transaction. 18 U.S.C. § 2(a).[2]

■ It is immaterial which person actually made delivery to the agent. Jamail v. United States, 55 F.2d 216 (5th Cir. 1932). Possession of narcotics by one was possession by the other as well. United States v. Maroy, 248 F.2d 663 (7th Cir. 1957), certiorari denied 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414; United States v. Chiarelli, 192 F.2d 528 (7th Cir. 1951), certiorari denied 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683; United States v. Cohen, 124 F.2d 164 (2nd Cir. 1941), certiorari denied sub nom Bernstein v. United States, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210; United States v. Hodorowicz, 105 F.2d 218 (7th Cir. 1939), certiorari denied 308 U.S. 584, 60 S.Ct. 108, 84 L.Ed. 489. See also 27 F.R.D. 169.

Appellant contends that the Government failed to prove that the narcotics were not sold in the original stamped package as charged in the indictment. The record shows that the narcotics were sold in snuff cans. The snuff cans were introduced into evidence and these were available for scrutiny by the jury. This Court examined the snuff cans, which were among the exhibits certified on appeal, and found no stamps thereon. We found from our examination no label on the cans indicating the contents to be a narcotic. We are convinced as was the jury that these cans were not the original stamped packages in which the narcotics were sold. The evidence on this point is direct and the jury was warranted in concluding that the Government sustained its burden on this statutory requirement. Acuna v. United States, 74 F.2d 359 (5th Cir. 1934).

■ The appellant further contends that the Government failed to prove that appellant was not registered by law to

2. Principals. "(a) Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

dispense narcotics. The witnesses testified that appellant operated a grocery store. The totality of the negotiations was cloaked in a shroud of secrecy and furtive behavior. It would not be reasonable to assume that drugs are legally dispensed on a self-service basis, taped to ledges in telephone booths. The extreme measures taken by appellant and Sigler at the time of delivery are not consistent with the normal legitimate methods of selling drugs. Upon this circumstantial evidence alone the jury was warranted in its finding that appellant was not legally authorized to dispense narcotics. See Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Moreover, since possession of narcotics in other than its original stamped package is, under 26 U.S.C. § 4704 (a), prima facie evidence of a violation, the failure of appellant to offer a reasonable explanation consistent with innocence may be considered by the jury to be evidence that appellant was not authorized to dispense narcotics. Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Moore v. United States, 271 F.2d 564 (4th Cir. 1959), reversed on other grounds. The prima facie presumption merely places the burden upon him as to matters peculiarly within his knowledge. Acuna v. United States, supra.

Appellant's counsel, in cross examining the Government agent, clearly indicated through his lines of questioning that appellant was asserting the defense of entrapment.[3]

This indication was borne out when counsel for appellant raised the defense of entrapment in his motion for judgment of acquittal.

On redirect examination counsel for the Government asked this question:

"Q. Now, you said on your direct examination that your purpose in going there was to see Walker. Had you had information, previous to that time, that led you to believe that Walker would be dealing in narcotics or that you might be able to make a purchase?"

(Objection by counsel for appellant overruled by the Court.)

"A. Yes, sir."

[9] Appellant contends that the question above was improper and that the agent's answer should have been excluded on the grounds that the appellant had not raised the question of entrapment. As stated above, the line of questioning which counsel for appellant pursued clearly indicated the defense of entrapment. Where the defendant of entrapment is raised the Government is justified in producing evidence to support its contention that the criminal design or purpose already existed in defendant's mind at the time he was given the opportunity to violate the law. Washington v. United States, 275 F.2d 687 (5th

---

3. "Q. Now, Mr. Barber, you say that on April 26, 1960, you went to the home or place of business of Eugene Walker?
A. Yes, sir.
Q. And you told him you were Ralph Moon?
A. Yes, sir.
Q. And you told him you were a gambler from Birmingham?
A. At that time I told him I was Ralph Moon from Birmingham.
Q. You attempted to induce him to sell you some drugs, some narcotics, in that identity as Ralph Moon.
A. I told him we had a mutual acquaintance in Birmingham that was supposed to introduce me.

Q. You were assuming this identity in order to get him to sell you narcotics, were you not, sir?
A. Yes, sir.
Q. You did not disclose who you were, did you?
A. I did not give him my true name, no, sir.
   \*     \*     \*     \*     \*
Q. I ask you this, Mr. Barber, was it your intent, from the beginning of this matter, to prosecute Eugene Walker?
A. Yes, sir, anyone engaged in the illegal narcotic traffic, I intend to prosecute.
Q. And specifically Eugene Walker, when you went to his place?
A. At that time, yes, sir."

Cir. 1960) ; Reece v. United States, 131 F.2d 186 (5th Cir. 1942).

Appellant attempts to distinguish the Reece case from the case here by stating that the officer was told, in the Reece case, to go to a certain vicinity where numerous violations were occurring. No mention was made of the person suspected. In this case, however, he contends that the question propounded by the Government was prejudicial and hearsay, since appellant's name is mentioned in the statement. There is no indication from the question itself or from the answer *what* the agent was told by any other person. He was asked, "Had you had information * * * *that lead you to believe* that Walker would be dealing in narcotics * * * *"* Although basing his grounds for belief on hearsay information, the agent did not testify what the information was. He testified about his own state of mind for the purpose of showing his reasonable belief in appellant's criminal propensities at the time he approached appellant to attempt to effectuate the sale. Moreover, this brief allusion was offered only in rebuttal following appellant's injection of the defense of entrapment, bringing into play this very issue of the agent's own conduct. See Sherman v. United States, 356 U.S. 369 at 382, 78 S.Ct. 819, at 825, 2 L.Ed.2d 848 (1958). Justice Frankfurter in his concurring opinion stated:

> "The intention referred to, therefore, must be a general intention or predisposition to commit, whenever the opportunity should arise, crimes of the kind solicited, and in proof of such a predisposition evidence has often been admitted to show the defendant's reputation, criminal activities, and prior disposition. The danger of prejudice in such a situation, particularly if the issue of entrapment must be submitted to the jury and disposed of by a general verdict of guilty or innocent, is evident. The defendant must either forego the claim of entrapment or run the substantial risk that, in spite of instructions, the jury will allow a criminal record or bad reputation to weigh in its determination of guilt of the specific offense of which he stands charged. Furthermore, a test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reason for the defense of entrapment."

A cautionary instruction by the Judge at this point in the trial might well have been in order. We cannot perceive, however, how this question and answer, in view of the overwhelming evidence of appellant's participation in both sales would constitute reversible error.

Although appellant attempts to assail the charge on lawful and unlawful entrapment by contending that there was no evidence of a lawful entrapment, we deem such argument merely the repetition of his previous assertion as to the sufficiency of the evidence in this regard. It is the duty of the Court to instruct the jury on all issues raised in the trial. Whether entrapment is lawful or unlawful is a question for the jury. Accardi v. United States, 257 F.2d 168 (5th Cir. 1958), certiorari denied 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112; United States v. Masciale, 236 F.2d 601 (2nd Cir. 1956), affirmed 356 U.S. 386, 78 S.Ct. 827, 2 L. Ed.2d 859 (1957).

The judgment of the District Court is, therefore,

Affirmed.