Franklin BROTHERS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18763.

United States Court of Appeals Ninth Circuit.

Feb. 5, 1964.

Alexander D. Calhoun, Jr., San Francisco, Cal., for appellant.

Sidney I. Lezak, Acting U. S. Atty. for District of Oregon, and Michael L. Morehouse, Asst. U. S. Atty., Portland, Or., for appellee.

Before HAMLEY, BROWNING and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge.

Franklin Brothers, tried on an eight-count indictment charging violations of the narcotics laws, and convicted and sentenced on six counts, takes this appeal.

We consider first the specifications of error directed against the judgment of conviction, and sentence, on Count VIII. Brothers was therein charged with having, on or about July 20, 1962, received, concealed and facilitated the transportation and concealment of a quantity of a narcotic drug, namely heroin hydrochloride, in violation of section 2(c) of the Narcotic Drugs Import and Export Act, as amended, 70 Stat. 570, 21 U.S.C. § 174 (1958).

Under this count the prosecution was obliged to prove three ultimate facts: (1) that a quantity of the drug was, on or about July 20, 1962, received or con-

cealed by Brothers or, on or about that day, he facilitated the transportation and concealment of a quantity of the drug; (2) that this quantity of drug had been imported contrary to law; and (3) that Brothers knew of the unlawful importation. See Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597.

The prosecution did not produce evidence bearing specifically upon the last two of these ultimate facts. Instead, it relied upon what it regarded as sufficient evidence of possession and the statutory presumption arising therefrom as set forth in the second paragraph of section 174, quoted in the margin.[1] Giving sanction to this manner of establishing the second and third ultimate facts necessary to be proved, the trial court instructed the jury, in effect, that proof of possession would give rise to the statutory presumption sufficient to establish, prima facie, both the fact of unlawful importation and Brothers' knowledge thereof.

On appeal appellant asserts that assuming, *arguendo*, that the evidence as to possession was sufficient, the statutory presumption was correctly applied as to the fact of his knowledge of the unlawful importation, but not as to the fact of unlawful importation. While conceding that many court decisions, including some by this court, hold that the statutory presumption applies to both elements, appellant argues that they were wrongly decided. The error, appellant asserts, arose when the court in Copperthwaite v. United States, 6 Cir., 37 F.2d 846, improperly interpreted the decision of the Supreme Court in Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904.[2] Examination of the statutory background of section 174, appellant contends, supports his view that there is no statutory presumption, arising from proof of possession, that the narcotic drug was unlawfully imported.[3]

Appellant presents cogent reasons why Yee Hem should not have been relied upon by the court in Copperthwaite, in holding that the section 174 presumption applies with regard to the fact of illegal importation as well as the defendant's knowledge of such unlawful importation. Nevertheless, section 174, considered on its face, is reasonably open to the construction that the presumption applies

1. The first two paragraphs of 21 U.S.C. § 174 read:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,-000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,-000.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

2. *Yee Hem* dealt with the offense of concealing smoking opium, as defined by a statute which, in addition to containing a statutory presumption similar to that contained in section 174, also contained a statutory presumption to the effect that all smoking opium or opium prepared for smoking found within the United States had been unlawfully imported, the burden of proof being placed upon the accused to rebut such presumption. Act of February 9, 1909, 35 Stat. 614, as amended by the Act of January 17, 1914, 38 Stat. 275. The second presumption referred to above is now 21 U.S.C. § 181 (1958).

3. This argument should have been advanced in the trial court by excepting to the instruction referred to above, but no such exception was taken. We nevertheless consider the argument because of the possibility that plain error may have been involved. See Rule 52(b), Federal Rules of Criminal Procedure.

to both of the elements referred to above. Under that construction "the" narcotic drug of which an accused, under section 174, must be found possessed in order to give rise to the presumption, does not refer to a drug established as having been unlawfully imported, but to the drug, whether or not established as having been unlawfully imported, which the accused received, concealed, bought, or which he sold, or of which he facilitated the transportation, concealment or sale.

In the opium statute, referred to in note 2, the reference in the otherwise similar presumption provision, was not to "the" drug, but to "such" drug. As the court said in Copperthwaite, 37 F.2d at page 848, the use of "such opium" more strongly suggests an intent to build the inference upon actual proof of importation, than the words "the narcotic drug," as used in section 174. This may explain why Congress, five years after the original 1909 enactment, amended the opium statute to add the second explicit statutory presumption that opium within the country had been unlawfully imported.

Appellant believes this demonstrates that Congress intended a statutory presumption of importation in the case of opium but not in the case of other drugs. We think it indicates that Congress, concerned about the limitations of the first presumption where the "such" language is used, was not so concerned in the case of section 174 where "the" is used. No reason has been suggested why Congress would wish to create a statutory presumption of importation in the case of opium but not in the case of narcotic drugs.

In any event, the section 174 presumption has, from the beginning, been consistently construed by the courts as applying both to the fact of illegal importation, and the defendant's knowledge thereof. A long line of decisions in this court, beginning as early as Hooper v. United States, 9 Cir., 16 F.2d 868, decided in 1926, and continuing down to the 1960's have so held.[4] As recently as Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597, the Supreme Court indicated that the fact of illegal importation as well as the defendant's knowledge of the unlawful importation, could be established through utilization of the section 174 presumption.

If this is not the construction Congress intended, it is likely that it would have said so, by statutory amendment, a long time ago.

▮ We therefore hold that the trial court did not err in telling the jury that the presumption was available as to both elements stated above. For the same reasons we hold that the judgment of conviction on Count VIII is not invalid because of the lack of evidence bearing specifically upon the fact of unlawful importation, assuming that the evidence as to possession was sufficient to give rise to the section 174 presumption, a matter to be inquired into below.

Next, as to Count VIII, appellant argues that there was no evidence of actual or constructive possession.

▮ We recount the relevant facts bearing upon possession, viewing the evidence, as we must, in the light most favorable to the Government.[5]

On July 11, 1962, Northern J. Cooks, a special employee of the Government, in a transaction other than that described in Count VIII, purchased some narcotic drugs from Brothers on a street in Portland, Oregon. About 11:00 P.M. on the evening of July 19, 1962, Cooks placed a telephone call to the residence of Sidney Washington in Portland and asked to speak to Brothers. Brothers came to the telephone and when Cooks indicated that he wished to purchase more narcotic drugs, the two arranged to meet at the Flamingo Club, a Portland tavern.

4. Among our recent decisions to this effect are Rodella v. United States, 9 Cir., 286 F.2d 306, 311; and Cellino v. United States, 9 Cir., 276 F.2d 941, 943.

5. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Arellanes v. United States, 9 Cir., 302 F.2d 603, 606.

Following this conversation Cooks and James W. Parker, a federal narcotics agent, went to the Flamingo Club and sat down at the bar. Brothers came in a few minutes later and sat down beside Cooks. The two discussed the narcotics transaction and a price of fifty dollars for five capsules was agreed upon. Cooks turned to Parker and Parker gave Cooks fifty dollars in currency. Cooks slid this money along the counter to Brothers who then counted it. Brothers then told Cooks to follow him.

Leaving Parker at the bar, Brothers and Cooks walked east along Russell Street to Williams Street where they turned left and went about half a block to the Cathay Market. They stopped at this point and Brothers counted the money again. Brothers then looked around and Sidney Washington was seen standing nearby. Brothers then stepped to the curb, pointed to the curb, and told Cooks to pick up a Lucky Strike package. Cooks did so and Brothers then told Cooks to look in the package and see if the five capsules were there. Cooks looked in the package and found five gelatin capsules inside the cellophane inner wrapping of the Lucky Strike package.

Cooks removed the cellophane containing the capsules, discarded the rest of the Lucky Strike package, and returned to the Flamingo Club which he had left about five minutes previously. Entering the tavern, Cooks gave the five capsules to Parker. It was then about 1:05 A.M. on July 20, 1962. As Cooks and Parker left the tavern Brothers and Washington were seen driving away in Washington's car. The whitish powder contained in the five capsules was found to be heroin hydrochloride.

■ Under the facts summarized above Brothers was not shown to have had actual possession of the narcotics in question. However, proof of actual physical possession is not required in order to give rise to the section 174

presumption. Constructive possession is sufficient, and this may be shown by direct or circumstantial evidence that the person charged with possession had dominion and control of the drugs.[6]

■ The dominion and control which will constitute constructive possession may be exclusive, or it may be joint dominion and control with another or others. Arellanes v. United States, 9 Cir., 302 F.2d 603, 606. On the other hand, mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession.[7]

When Brothers, having arranged to sell five capsules of heroin hydrochloride to Cooks, took the latter with him on a walk up the street, pointed to a package by the curb, and told Cooks to pick it up and see if it did not contain five capsules, he exerted effective dominion and control over that package and the narcotics contained therein.

It is immaterial whether Brothers, Washington or someone else placed the package at that place. Brothers knew of its location and contents. He in effect represented to Cooks that he, Brothers, had such dominion and control over the package so that he could deliver it to Cooks in consummation of a sale for which Brothers had already been paid. The representation proved to be truthful. No one interfered with the delivery of the package to Cooks accomplished when Cooks picked it up at the curb. The package was found to contain the kind and quantity of narcotic drugs for which Brothers had been paid.

Brothers' demonstrated dominion and control over these narcotics was at least as great as that which was held to be sufficient in White v. United States, 9 Cir., 315 F.2d 113. In that case Wallace,

6. White v. United States, 9 Cir., 315 F.2d 113, 115; Rodella v. United States, 9 Cir., 286 F.2d 306, 312; Cellino v. United States, 9 Cir., 276 F.2d 941, 945.

7. Arellanes, supra, 302 F.2d at 606; Hernandez v. United States, 9 Cir., 300 F.2d 114, 117.

a special Government employee, contacted defendant White to arrange for the purchase of narcotics. The two drove around a few minutes in White's automobile, at which time Wallace gave White one hundred dollars in official funds as payment for the drugs. White directed Wallace to a specific Standard gas station telling White that the heroin would be under the sink in the men's room. Wallace was unable to find the drugs at this place. He contacted White again, who directed Wallace to another gas station. Wallace went to that gas station and picked up the heroin.

Likewise, Brothers' dominion and control over the narcotics in question was as well established as that which was found sufficient in Rodella v. United States, 9 Cir., 286 F.2d 306. While the relevant facts in that case are not stated in the opinion they are stated in the briefs on appeal. Robert Zunga negotiated with Rodella over the telephone for the purchase of one ounce of heroin. The agreed rendezvous was the Alibi Bar, in Los Angeles. At about the appointed time Rodella was seen entering the Alibi Bar, staying for a few minutes, and then leaving the premises. Shortly thereafter Zunga went to the bar and again telephoned Rodella. The latter told Zunga that the heroin was in a soap container in the bathroom of the Alibi Bar. Zunga then found and removed the heroin from the indicated hiding place. Zunga later paid Rodella the agreed price for these drugs.

Brothers calls attention to the opinion of this court in Williams v. United States, 9 Cir., 290 F.2d 451, in which it was held that the evidence as to possession was insufficient to give rise to the section 174 presumptions. In that case the informer, McCormick, entered into negotiations with Williams for the purchase of narcotics. Williams worked at a cafe and next to the cafe there was a refuse can. McCormick testified that Williams said to him " * * * [T]here was a can and it *would be* in there, that he would leave it there * * *." McCor-

mick also testified: " * * * [T]he defendant was in there and he asked me to let him out, as I had the driveway blocked, and I went out to let him out * * * and * * * *I asked him* if the stuff was there. *He said he had to check,* so we walked over to the can and I raised the lid, and it was there." (Emphasis in Williams opinion at 452 of 290 F.2d.)

In holding that, under this testimony, Williams was not shown to have constructive possession of the narcotics in the refuse can, the court emphasized the fact that no sale of narcotics between McCormick and Williams had been arranged. Williams, the court said, was only contemplating entering into a partnership with the informer for the future sale of narcotics to third persons. "We have no doubt," this court said, "the appellant either had dealt, or planned to deal in the future, in marijuana. But that does not prove possession of the two kilograms of marijuana on July 20, 1959, the date charged." 290 F.2d at 453. The court, in Williams, expressly reaffirmed the holdings of this court in Rodella v. United States, supra.

The Williams case, therefore, is distinguishable from the case before us, where effective dominion and control was exercised over the narcotics as a means of consummating a sale already arranged. We hold that, here, the evidence of constructive possession of the narcotic drugs was adequate to warrant application of the section 174 presumption.

Brothers argues that if there was sufficient evidence of constructive possession, the trial court should have, but did not, give an instruction on what is necessary to constitute constructive possession.

No such instruction was requested at the trial, nor did appellant except to the failure of the trial court to give such an instruction. In the absence of plain error, within the meaning of Rule 52(b), Federal Rules of Criminal Procedure, this precludes consideration of the point on appeal.

Brothers asserts that failure to give an instruction defining "the necessary contours of such possession" was plain error, but offers no argument and cites no authorities in support of the statement. In our view, and under the facts of this case, failure to give an instruction defining constructive possession could not have prejudiced Brothers. If anything, as the Government points out, this failure was beneficial, since Brothers was not shown to have had actual physical possession of the narcotics. As before stated, the evidence was sufficient to support a finding of constructive possession. The giving of such an instruction was therefore not essential to a fair trial, and accordingly failure to so instruct was not plain error.

Lastly, as to Count VIII, Brothers contends that the failure of the trial judge to caution the jury specifically as to the credibility of Cooks justifies reversal. In support of this view, appellant cites On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270.[8] It is also called to our attention that virtually the entire case of the Government rested on the testimony of Cooks.

Again, there was no request in the trial court for such an instruction, and no exception to the failure to give an instruction of this kind. While the court did not specifically characterize Cooks as an informer in its instructions, the jury was advised to carefully scrutinize the circumstances under which each witness testified and consider every matter in evidence which tended to indicate whether the witness was worthy of belief, including his motive, state of mind, and relationship to the parties. In our opinion the failure, under the circumstances of this case, to give a cautionary instruction was not plain error.[9]

The judgment of conviction, and sentence on Count VIII is in every respect valid. A fifteen-year sentence was imposed thereon. The ten- and fifteen-year sentences imposed on the other five counts upon which convictions were obtained were made concurrent with the fifteen-year sentence on Count VIII. It follows that it is unnecessary to consider arguments directed solely to the other five counts. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321; Sinclair v. United States, 279 U.S. 263, 299.

The judgment is affirmed.

---

8. In On Lee v. United States, the court said, 343 U.S. at page 757, 72 S.Ct. at page 793:
    "The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe cred-

ibility by cross-examination and to have the issues submitted to the jury with careful instructions."

9. See Sartain v. United States, 9 Cir., 303 F.2d 859, 862; Young v. United States, 9 Cir., 297 F.2d 593; Orebo v. United States, 9 Cir., 293 F.2d 747; Mims v. United States, 9 Cir., 254 F.2d 654.