Jose **CAZARES–RAMIREZ** and Jose
Felix Nandin, Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 25010.

United States Court of Appeals
Fifth Circuit.

Jan. 7, 1969.

Rehearing Denied Feb. 28, 1969.

Rehearing Denied March 20, 1969.

Jeremiah Ingels Rhodes, John W. Claybrook, Eagle Pass, Tex., for appellants.

Reese Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before THORNBERRY and SIMPSON, Circuit Judges, and ATKINS, District Judge.

SIMPSON, Circuit Judge:

Jose Cazares-Ramirez and Jose Felix Nandin, were jointly indicted,[1] tried and

1. "The Grand Jury Charges:
    That on or about November 2, 1966,
    within the Del Rio Division of the

Western District of Texas, JOSE
CAZARES-RAMIREZ and JOSE FE-
LIX NANDIN did fraudulently and

convicted before a jury for violation of Title 21 U.S.C. Section 174.[2] Counts Two and Three of the indictment charging the plaintiffs jointly with selling heroin in violation of Title 26 U.S.C. Section 4705(a), and Title 26 U.S.C. Section 4704(a), respectively, were abandoned and dismissed. From judgments imposing confinement sentences of ten years upon each defendant, these appeals were taken.

We affirm the conviction as to Cazares-Ramirez. As to Nandin, the other two members of this panel affirm in a separate opinion prepared by Judge Thornberry. The writer of this opinion views the evidence as insufficient to support Nandin's conviction and would reverse and render.

Viewed in the light most favorable to the government[3] the evidence showed that on the afternoon of November 1, 1966, Customs Agent Sam Schwartz, acting in an undercover capacity and posing as a Dallas dope peddler, met with the appellants in the parking lot directly behind the Merchant's Cafe on Main Street in Eagle Pass, Texas. Schwartz was introduced to the appellants by an informant, who sat in the automobile in the parking lot during this initial interview but was not further involved in the case. Cazares-Ramirez told Schwartz that he had 30 ounces of white heroin which he wished to sell for $450.00 an ounce and that he would accept $13,500.-00 for the entire 30 ounces. Cazares-Ramirez told Schwartz that the heroin would be good heroin, fifty percent pure or better. Nandin took almost no part in the conversation, but at this point he told Schwartz that the white heroin would be good quality and that the weight would be correct. Cazares-Ramirez told Schwartz that if he preferred brown heroin he had approximately one and one-half kilos he would sell for $350.00 per ounce. Schwartz stated that he preferred to buy the white heroin and a price of $13,000.00 for the 30 ounces was agreed upon. Schwartz insisted that delivery be made in the United States, to which Cazares-Ramirez agreed. Schwartz stated that he was tired and asked where he could obtain a room. One of the appellants suggested the Holly Inn Motel, Eagle Pass, Texas, and the other agreed that this was a good place. Schwartz asked when delivery would be made and Cazares-Ramirez replied that he would bring the heroin to Schwartz's room the following afternoon. Schwartz stated that he preferred that delivery be made before noon to save him from having to pay for another day at the motel, and this was agreed to by Cazares-Ramirez, who then asked Schwartz if he wanted the heroin in one large package or if he preferred to have it in smaller packages. Schwartz indicated that he preferred that it be

knowingly receive, conceal and facilitate the transportation and concealment of a narcotic drug, namely, approximately 1146.93 grams of heroin hydrochloride, after said narcotic drug had been imported and brought into the United States contrary to law, namely, the Narcotic Drugs Import and Export Act, as amended, and the said JOSE CAZARES-RAMIREZ and JOSE FELIX NANDIN then knew said narcotic drug to have been imported and brought into the United States contrary to law; in violation of Title 21, United States Code, Section 174."

2. "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transpor-

tation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. * * *

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

3. Glasser v. U. S., 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

contained in smaller packages. The two appellants left. This meeting had lasted about fifteen minutes. The following day, November 2, 1966, at approximately 11:35 A.M. Cazares-Ramirez arrived alone at the Holly Inn Motel and entered Schwartz's room. Schwartz asked if he had brought the heroin and was told that he did not have it with him but that it would only take about five minutes to get it. Schwartz advised Cazares-Ramirez that he would pay for the heroin after he had checked it to be sure that it was genuine. Cazares-Ramirez departed. He returned about 12:35 P.M. the same day accompanied by Nandin, and parked his car in front of Schwartz's room. Both appellants entered the room and Cazares-Ramirez placed a package that he was carrying on the table. He opened the package and Schwartz observed two plastic bags each of which contained five smaller packages. Cazares-Ramirez picked up one of the packages and said that he had wrapped them so they would be easy to unwrap and he pulled the end of the package and opened it. Schwartz examined the heroin and advised the appellants that he would go out to his car and get the money with which to pay for it. About one minute after he returned to the motel room with the money, customs officials entered the room, seized the heroin and placed the appellants under arrest. A subsequent search of Cazares-Ramirez's automobile revealed several packages of brown heroin and white heroin and a set of scales in a cardboard box. On the way to jail with a customs agent, Cazares-Ramirez admitted importing the heroin into the United States earlier that day and said "this is what I get for fooling around with heroin trying to make some money and not working." These statements were made after full warnings as to Fifth and Sixth Amendment rights.

## THE APPEAL OF JOSE CAZARES-RAMIREZ

The questions raised by this appellant on appeal, stated by him as four separate points, resolve themselves into two questions: (1) whether or not the evidence shows unlawful entrapment, and (2) by reason thereof whether or not the district court erred in denying motion for judgment of acquittal.

In Jasso v. United States, 5 Cir. 1961, 290 F.2d 671, this Court had occasion to cite with approval the guidelines laid down by United States v. Sherman, 2 Cir. 1952, 200 F.2d 880, (per Learned Hand, J.) for determining the propriety of inducements to commit crime. The holding was that such inducements by government agents were proper where (1) there was an existing course of similar criminal conduct, (2) the accused had already formed a design to commit the crime, or (3) his willingness to do so was evidenced by ready compliance. Here it appears that this appelland readily offered to supply large quantity of heroin as soon as agent Schwartz was introduced as a dope peddler by the informant. He was patently ready and willing to violate the law upon being given the opportunity to do so by the offer of the government agent to purchase the heroin. In further proof that the criminal design or purpose existed in his mind at the time that he was given the opportunity to violate the law it was established that he could furnish either white or brown heroin and that he would sell one and one-half kilos of brown heroin at $350.00 per ounce. The search of his car after his arrest uncovered an additional fourteen ounces of heroin and a set of balance scales suitable for weighing narcotics in gram weights. See Reece v. United States, 5 Cir. 1942, 131 F.2d 186; Walker v. United States, 5 Cir. 1962, 301 F.2d 94, and Washington v. United States, 5 Cir. 1960, 275 F.2d 687.

Cazares-Ramirez asserts that the court below erred in overruling his motion for judgment of acquittal. Except when the facts are undisputed and cannot admit of any other conclusion, entrapment is a question to be resolved by the jury. See Sorrells v. United States (1932) 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Sherman v. United States

(1958) 356 U.S. 369, 78 S.Ct. 819, 2 L. Ed.2d 848; Lopez v. United States (1963) 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462; Accardi v. United States, 5 Cir. 1958, 257 F.2d 168, cert. denied 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112; Coronado v. United States, 5 Cir. 1959, 266 F.2d 719; and Suarez v. United States, 5 Cir. 1962, 309 F.2d 709, 710. There was sufficient evidence to establish that Cazares-Ramirez was not entrapped, and there was sufficient evidence to support the jury's verdict of guilty. As to this appeal, the judgment of the district court is affirmed.

### THE APPEAL OF JOSE FELIX NANDIN

As to this appeal the members of this panel are in disagreement. The author of this opinion would reverse for the reasons set forth hereinafter. Judges Thornberry and Atkins, a majority of the panel, affirm the conviction of Nandin for reasons set forth in Judge Thornberry's separate opinion. The remainder of this opinion then is my dissent from this majority holding.

The theory of the government's case as to this defendant was predicated on the presumption provided in the closing paragraph of Title 21 U.S.C. Section 174, as follows:

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

The effect of the presumption is such that a jury is justified in presuming that heroin has been illegally imported into the United States and that the defendant knew of its illegal importation when it is established beyond a reasonable doubt that the defendant has possession of the narcotic drug. It is clear that constructive possession is sufficient. See United States v. Malfi, 3 Cir. 1959, 264 F.2d 147; United States v. Santore, 2 Cir. 1959, 290 F.2d 51; Cellino v. United States, 9 Cir. 1960, 276 F.2d 941; Green v. United States, 9 Cir. 1960, 282 F.2d 388; United States v. Hernandez, 2 Cir. 1960, 290 F.2d 86; United States v. Mills, 3 Cir. 1961, 293 F.2d 609; United States v. Jones, 2 Cir. 1962, 308 F.2d 26; Lucero v. United States, 8 Cir. 1963, 311 F.2d 457; Mack v. United States, 8 Cir. 1964, 326 F.2d 481; Brothers v. United States, 9 Cir. 1964, 328 F.2d 151; United States v. Ramsey, 2 Cir. 1966, 374 F.2d 192; Amaya v. United States, 10 Cir. 1967, 373 F.2d 197; Moody v. United States, 9 Cir 1967, 376 F.2d 525.

The co-defendant's admission of illegal importation of the heroin was stricken by the trial court as hearsay evidence as far as Nandin was concerned and there was no other evidence that Nandin knew that the heroin was illegally imported. The question is whether the evidence was sufficient to support the statutory presumption, based on constructive possession, since the evidence failed to show any actual possession of the heroin by Nandin.

The government urges that we follow Cellino v. United States, 9 Cir. 1960, 276 F.2d 941,[4] as warranting the application of the presumption by reason of constructive possession. In *Cellino* the defendant was approached by an undercover agent for the purpose of purchasing heroin. He stated that he did not have any but that he could take the prospective purchaser to the man that did.

"He took them to a place where very shortly they were contacted by Bruno. True, Bruno negotiated the sale and received payment in appellant's absence; but prior to delivery Bruno directed the purchasers to the drug-

4. Characterized by United States v. Mills, 3 Cir. 1961, 293 F.2d 609 at 611, as "the most tenuous inference of possession which any appellate court has sanc-

tioned in the cases in this line which we have examined."

store where they found appellant. There appellant vouched for Bruno, assuring the purchasers that Bruno would be back with the narcotics. Within a few minutes Bruno came to the drugstore and delivered the heroin in appellant's presence." Cellino v. United States, supra, at page 946.

In conclusion, the Court said:

"It is our conclusion that the circumstantial evidence of dominion and control is sufficient to justify a finding by the jury of constructive possession in appellant within the meaning of Section 174." Cellino v. United States, supra, at page 946.

The en banc decision of the Second Circuit in United States v. Santore, 2 Cir. 1959, 290 F.2d 51, upheld the conviction of one Lo Piccolo predicated upon the application of the presumption under the following facts:

"As to * * * Lo Piccolo * * * there [was no] eyewitness testimony that he had actual physical possession of the heroin. However, Lo Piccolo's control over the arrangements for the particular sale is attested to by the visits Casella made to his apartment both before and after reporting to the agents how delivery would be made. It appears possible, if not probable, that the narcotics were brought to Lo Piccolo's apartment by Iguazio Orlando, the courier for the conspiracy, and never left his possession before they were deposited in the agent's hotel room. The proof points clearly, however, to Lo Piccolo's supervision over the entire errand, even to the extent of his accompanying Orlando to the hotel and waiting outside in his car (which was used for the trip) while Orlando deposited the goods in the room." United States v. Santore, supra, at page 76.

The Ninth Circuit held the presumption applicable in Brothers v. United States, 9 Cir. 1964, 328 F.2d 151, where the following transpired. The defendant met with an undercover government agent at a bar for the purpose of selling heroin to the agent. The purchase price was paid at the bar and the buyer and seller left on foot. The seller stepped over to the curb and told the agent to pick up a Lucky Strike cigarette package, look inside and see if five capsules were there. Five capsules containing heroin were inside the cigarette package. In affirming the conviction the Court stated:

"When [defendant], having arranged to sell five capsules of heroin hydrochloride to [Government agent], took the latter with him on a walk up the street, pointed to a package by the curb, and told [government agent] to pick it up and see if it did not contain five capsules, he exerted effective dominion and control over that package and the narcotics contained therein." Brothers v. United States, supra, at 155. See also White v. United States, 9 Cir. 1963, 315 F.2d 113.

The appellant Nandin, on the other hand, places his reliance upon United States v. Jones, 2 Cir. 1962, 308 F.2d 26. There the evidence was held legally insufficient to serve as a predicate for application of the statutory presumption.

In *Jones*, the defendant acted as a go-between for the seller and the undercover government agent. He offered to introduce the agent to his "connection, who deals good stuff." The meeting was arranged and a sale took place. Jones did not appear to have anything to do with setting the price and the seller told the agent not to deal with anyone else in the future other than the seller himself or his associate (not the defendant Jones). The Second Circuit reversed, reasoning with respect to the concept of possession:

"The term has been interpreted by the courts to encompass power to control the disposition of drugs as well as mere physical custody. * * * We have said, moreover, * * * that one having a working relationship or a sufficient association with those having physical custody of the drugs so as to enable him to assure their

production, without difficulty, to a customer as a matter of course may be held to have constructive possession. But a casual facilitator of a sale, who knows a given principal possesses and trades in narcotics but who lacks the working relationship with that principal that enables an assurance of delivery, may not be held to have dominion and control over the drug delivered and cannot be said to have possession of it." United States v. Jones, supra, 308 F.2d at page 30.

I agree with the Third Circuit in *Mills,* supra, that *Cellino,* supra, represents the outside limit of "tenuous influence of possession." I view the facts relied on by the government here to constitute proof of possession as being weaker than those in *Cellino.* I think that Nandin was no more than "a casual facilitator of the sale",[5] who may not be said to have had any real connection with it, or even the most tenuous constructive possession. The circumstances relied on to show constructive possession were his statement that the white heroin would be good stuff and that the weights would be correct, his recommendation of the motel, and the fact that he accompanied Cazares-Ramirez to the motel at the time the delivery was made. In essence this amounts to no more than proof of presence and guilty knowledge which are clearly insufficient to establish the required constructive possession.

I have no quarrel with the majority holding that constructive possession is sufficient to activate the statutory presumption, as indicated supra, page 231. I have no fault to find with the holding in Smith v. United States, 5 Cir. 1967, 385 F.2d 34, 38, and Garza v. United States, 5 Cir. 1967, 385 F.2d 899, the two cases upon which the majority relied. In both *Smith* and *Garza* the circumstances indicating guilt were considerably stronger than the circumstances relied upon to implicate Nandin. In holding that the evidence was sufficient to support the jury verdict of guilty as to

Nandin I am convinced that the majority approves an impermissible pyramiding of inferences. The circumstances here present are simply not strong enough to exclude the reasonable hypothesis of innocence. In both *Smith* and *Garza* the reverse was true.

The conviction as to Nandin should be reversed and set aside upon the authority of *Jones,* supra. I think the district court should have granted Nandin's motion for judgment of acquittal, and would reverse and render here.

I respectfully dissent from the affirmance of Nandin's conviction.

THORNBERRY, Circuit Judge:

Judge Atkins and I concur in Judge Simpson's view that the conviction of Cazares-Ramirez must be affirmed and, acting as a majority, we also affirm the conviction of .Jose Felix Nandin. As Judge Simpson has indicated, he would reverse Nandin's conviction for insufficiency of evidence.

In Smith v. United States, 5th Cir. 1967, 385 F.2d 34, 38, this Court defined constructive possession as follows:

> "Possession" within the meaning of the statute may be either actual or constructive, constructive possession being dominion and control over the illegal drug. Such possession need not be exclusive, but may be shared with others, and is susceptible of proof by circumstantial as well as direct evidence. * * *

This definition was adopted in Garza v. United States, 5th Cir. 1967, 385 F.2d 899. In each of these cases, we held the presumption of 21 U.S.C. § 174 applicable to a defendant who, though not caught with the incriminating evidence in his hands, was known to have driven in a car with the illegally imported drugs and from all the circumstances appeared to share dominion and control over them. The same can be said of Nandin: That is, the jury could reasonably infer that

---

5. United States v. Jones, supra, 308 F.2d at page 30.

when he and Cazares-Ramirez made the trip to the motel to complete the sale, they shared dominion and control over the heroin. From the fact that Nandin attended the negotiations on November 1 and vouched for the quality of the heroin and from the additional facts that he returned to the motel in a car with Cazares-Ramirez on the afternoon of November 2 and walked into the room where the sale was completed, knowing that the prospective buyer was staying there and knowing that his companion had the drugs on his person, the jury could reasonably infer that he was a full-fledged partner in the venture. It could reasonably be concluded that Nandin was as much responsible for producing the drugs as Cazares-Ramirez, the only difference between the two being that Cazares-Ramirez did most of the talking and had the evidence in his hands when the arrest was made.

The inferences reasonably to be drawn from the evidence are entirely consistent with guilt, i. e., with constructive possession which brings the presumption of guilt into play, and are inconsistent with every reasonable hypothesis of innocence. As we have said many times, the question for the appellate court is whether the jury might reasonably conclude that the evidence fails to exclude every reasonable hypothesis but that of guilt. See O'Connell v. United States, 5th Cir. 1968, 402 F.2d 760 [October 28, 1968] and authorities cited therein. In the case at bar, the only hypothesis of innocence would be that while Nandin was present at all the critical times and obviously had guilty knowledge, he was merely a disinterested observer who did not share control over the drugs and did not have a financial interest in the sale. That he was merely a disinterested observer or casual facilitator seems to us such a remote possibility that we believe the jury could reasonably reject it and could decide the *only* reasonable inference to be that the two men who brought the heroin from the car to the motel room shared control over it.

The dissent relies on United States v. Jones, 2d Cir. 1962, 308 F.2d 26 where the evidence was held insufficient to support the statutory presumption. There, however, the defendant was nothing more than a go-between or casual facilitator. The most the jury could possibly infer was that he knew a man who sold drugs. The seller's statement to the undercover agent that in the future he should deal with the seller directly indicated that the defendant did not have a working relationship with the seller and did not share dominion and control over the drugs. In the case at bar, on the other hand, there is no evidence of this kind to negative the inference that Nandin shared dominion and control. The jury could reasonably interpret all the evidence to point toward a working relationship between the two appellants.[1]

We have considered Nandin's remaining contentions as to the district court's charge and find them to be without merit. Therefore, the convictions of Cazares-Ramirez and Nandin are in all things affirmed.

Rehearing denied.

SIMPSON, J., dissents.

---

1. A recent case in which the evidence was held insufficient to support the statutory presumption is Montoya v. United States, 5th Cir. 1968, 402 F.2d 847 [October 10, 1968]. There the only evidence was that Montoya was a passenger in the truck being used to transport a quantity of marihuana. Because of the location of the marihuana in the truck, it was as reasonable to infer that the defendant did not know the drugs were being transported as to infer that he did know. Under these circumstances, the Court was unable to say that the jury could reasonably infer that Montoya shared dominion and control and could reasonably exclude every hypothesis of innocence. The circumstantial evidence as to Nandin's dominion and control is far stronger, so that a proper jury question was clearly presented.