UNITED STATES of America,
Plaintiff-Appellee,

v.

William F. FERGUSON,
Defendant-Appellant.

No. 77-1074.

United States Court of Appeals,
Ninth Circuit.

June 8, 1977.

Rehearing and Rehearing En Banc
Denied Aug. 3, 1977.

---

Roger S. Auerbach, Auerbach & Freeman, Tucson, Ariz., for defendant-appellant.

William C. Smitherman, U. S. Atty., Gerald S. Frank, Asst. U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before BROWNING, KILKENNY and TRASK, Circuit Judges.

## OPINION

PER CURIAM.

Appellant was convicted of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He appeals on two grounds. We affirm.

Appellant was apprehended driving a van near the Mexican border, after seismic sensors indicated foot and vehicular traffic in that area. Searches of the van revealed a strong marijuana odor, marijuana debris, and several blankets. Backtracking led to the discovery of four sets of footprints paralleling the van's tracks, four men who ran across the border, and a cache of 1833 pounds of marijuana, some of which was wrapped in blankets of the same type as those found in appellant's van. Further backtracking led to a spot where the van had parked. The same four sets of footprints led back and forth between this spot and the cache of marijuana, and between the cache and the place where the marijuana had apparently been thrown over the border fence.

The Government's theory was that the marijuana was loaded into the van but subsequently removed when the van developed radiator problems, and that appellant was arrested while en route to arrange alternative transportation. Defendant testified he was hired to pick up the marijuana but repented; that he drove to the pickup area to tell the four men of his change of mind, and spent the night there after telling the four but without ever seeing the marijuana.

[1] 1. Appellant first argues that evidence of the marijuana debris found in his van was inadmissible as proof of a separate offense. The debris was not offered or received for this purpose, however, but rather to show possession of the 1833 pounds of marijuana in the cache, on the theory that the debris was left behind when the contraband was removed from the van to allow repair of the van's radiator.

Appellant argues that the debris was not shown to be marijuana by competent evidence. An experienced officer may identify a substance with which he is familiar. *United States v. Almada-Aldama*, 462 F.2d 952 (9th Cir. 1972). Officer Miller, who had considerable experience in identifying marijuana, testified that the debris was marijuana.

Appellant argues no connection was shown between the marijuana in the cache and the debris in the van. This is a variation of appellant's argument that the evidence was insufficient, to which we turn.

2. Appellant's contention that the evidence was insufficient to support the verdict is without merit. Appellant admitted that he was hired to pick up marijuana and that he went to the area in which the pickup was to be accomplished. The con-

flict is confined to whether he had possession (actual or constructive) of the marijuana, as the Government contends, or whether he changed his mind without acquiring possession, as appellant contends.

Appellant admittedly spent the night near the cache and the four persons who had smuggled the contraband across the border. The jury might reasonably conclude that such behavior was unlikely if appellant had decided to abandon the enterprise. Marijuana debris was found in the van,* along with blankets of the type in which part of the cache of marijuana was wrapped. The tracks between the cache, the van, and the border, and appellant's admission that he had radiator problems further supported the Government's stand that the contraband had been loaded and unloaded. Appellant's testimony regarding his statements to border officers conflicted in material respects with that of other witnesses. Some of the information appellant gave the officers was shown to be false. We are satisfied that the jury could reasonably have found appellant guilty of the charge against him beyond a reasonable doubt.

Affirmed.

TRASK, Circuit Judge, dissenting:

Appellant was found not guilty of Count I of the indictment which charged that he "did knowingly and intentionally *import* into the United States of American from Mexico approximately 1,833 pounds of . . . marijuana." This verdict is consistent with the findings of the Drug Enforcement Administration agent who testified that he found horse tracks to the Mexican side of the fence and four sets of footprints on the American side of the bound-

ary and leading up to the stash. Ferguson's footprints were not among those. (R.T. at 54). The "import" was made by throwing the bags of marijuana over the fence and then transporting them to the point where they were found. There is not the slightest evidence that appellant had anything to do with that handling of the marijuana. Possession in the sense of actual physical custody and control over the marijuana was therefore in the persons who left those tracks and made the stash. Ferguson was not one of those four. These are the same footprints observed between the marijuana cache and the van. (R.T. at 51). If the marijuana was ever transferred from the stash into the van, which is speculative, it must have been retransferred back to the original cache because it was *not* in the van when the van was stopped the following morning on its way back from whence it came and was diverted to Nogales.

A fair reading of the indictment on Count II makes it clear that the appellant was not charged with possession with intent to distribute some debris in the van. He was charged with "possession with intent to distribute approximately 1,833 . . . pounds of marijuana." The debris in the van could not support a charge to "distribute" the 1,833 pounds of marijuana which was left on the ground. I consider, then, what kind of possession, if any, appellant had of the 1,833 pounds of marijuana. All of that marijuana consisted of bricks wrapped in heavy butcher paper and then placed in white nylon sugar bags.[1] I find it completely unlikely that the marijuana debris would have come from the marijuana so packaged with the packages put in nylon bags and loaded in the van in an operation that consumed such a short time before it was reversed. I find, therefore, that the

---

* The dissent concludes it is "completely unlikely" that the marijuana debris in the van came from the cache, because "all" the marijuana was packaged in butcher paper and cloth sacks. But one of the arresting officers testified (1) that 25 kilos of marijuana was not so packaged but rather was wrapped in a blanket, and (2) that he found pieces of the butcher paper in the area where the van had stopped.

1. Agent George L. Miller testified:

"Q. Would you please describe what the the stash of marijuana looked like?

"A. Well, the stash of marijuana contained 35 or 36 of what we call sugar sacks, white nylon type bags. Each bag contains approximately 25 kilos of marijuana wrapped in white and pink butcher paper. There was also a blanket in there that had 25 kilos wrapped in one blanket." R.T. at 47.

government's own conjectures are insufficient to establish such a far-fetched actual possession.[2] Appellant did not have actual possession or custody of the 1,833 pounds of marijuana at any time. Viewing the evidence in the light most favorable to the government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), I find that the majority's position is too frail to support a conviction on Count II even against a defense based only upon the insufficiency of the evidence.

The play within a play which concerned the ownership of the van and the relationship *vel non* between Ferguson and the Dabneys brought out testimony that was impossible to reconcile and undoubtedly proved that Ferguson or Mrs. Dabney was badly mistaken, to take a charitable view of this entire melange. But it helps very little in the solution of the basic problem as to the possession or constructive possession of appellant to support a conviction under the statute and the decided cases.

It is clear that possession under the statute may also be constructive possession rather than actual possession.[3]

"Thus an ability to produce the drug, even through the use of agents, will permit an inference of possession by the principal. *Hernandez v. United States,* 300 F.2d 114 (9th Cir. 2/9/62, No. 17482). Such possession can thus be constructive and need not be exclusive but may be joint. . . . On the other hand, mere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug or the property on which it is found, is insufficient to support a finding of possession." *Arellanes v. United States,* 302 F.2d 603, 606 (9th Cir.), *cert. denied,* 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962).

**2.** On cross-examination, Agent George H. Sargeant testified:

"Q. So you actually had bricks that were wrapped in butcher paper within a larger or larger bags; is that correct?
"A. That's correct. However, I believe there were a couple of loose bricks that were brought back also, but I'm not sure.

*See also Williams v. United States,* 290 F.2d 451 (9th Cir. 1961).

In *United States v. Cepelis,* 426 F.2d 134, 135 (9th Cir. 1970), *cert. denied,* 404 U.S. 846, 92 S.Ct. 149, 30 L.Ed.2d 83 (1971), we found constructive possession because the defendant actually directed a government agent posing as a narcotics purchaser to a cache (apparently located in a deserted area) containing the contraband. Similarly, in *Brothers v. United States,* 328 F.2d 151, 155–56 (9th Cir.), *cert. denied,* 377 U.S. 1001, 84 S.Ct. 1934, 12 L.Ed.2d 1050 (1964), and *White v. United States,* 315 F.2d 113, 114–15 (9th Cir.), *cert. denied,* 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963), we found constructive possession because the defendants directed federal agents or informers to the public areas (*i. e.,* a sidewalk curb and a service station) where they had hidden the contraband. In the present case, however, there was no such direct evidence of appellant's control over the cache near the border.

Appellant testified that he drove down toward the border and was met before he reached the border by four Mexicans, one of whom spoke English. They led him to the place where the cache was located or nearby. Obviously he had no constructive possession before that time because he did not know where the marijuana was located or how to get to it. He could not have had any dominion or control over it. When he arrived at the place to which he was led, he stopped the van and stated that he would not haul the contraband back to his employers.

There was some evidence of a defective radiator and the need for repairs to it as a reason for returning without the load. There was no evidence to support this theory and I find it unpersuasive.

"Q. Well, were those in fact opened up by officers at the scene?
"A. I don't remember if they were or not." R.T. at 72–73

**3.** The government in submitting the case to the jury did not contend that there was actual possession, but argued only that there was constructive possession.

There was no other evidence as to possession. The four Mexicans who were apparently guarding the stash were not witnesses because they went over the fence and back to Mexico. The officers did not stop the appellant until the next morning. He was on his way back to the place from which he started. When stopped, the 1,833 pounds of marijuana were not in his van nor any part thereof. All that was discovered were some marijuana seeds and debris, some under the floor carpet and some at the door. Upon this thin foundation the government contends that the debris is part of the 1,833 pounds of marijuana. No explanation is made as to how debris could escape to the carpet and under it from blocks wrapped in heavy butcher paper and then packed in large sacks. Moreover, no witness took the stand to testify that he had examined the debris and found it to be a part of the 1,833 pounds. I find the evidence of the government entirely inadequate to prove guilt beyond a reasonable doubt and would therefore reverse.