983 F.2d 1079
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sebastian RAMIREZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leopoldo MANZO-GARCIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Perry WAGNER, Defendant-Appellant.
 Nos. 91-50671, 91-50694 and 91-50711.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1992.*
Decided Jan. 15, 1993.
 
 Before WALLACE, Chief Judge, and TROTT and T.G. NELSON, Circuit Judges.
 
 MEMORANDUM
 
 1
 Sebastian Ramirez, Leopoldo Manzo-Garcia and Perry Wagner appeal their jury convictions for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Manzo-Garcia and Ramirez also appeal their convictions for carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(d), and Wagner appeals his sentence under U.S.S.G. §§ 2D1.1(b)(1) and 1B1.3(a).
 
 
 2
 * SUFFICIENCY OF THE EVIDENCE
 
 
 3
 Appellants Ramirez and Manzo-Garcia argue that the evidence at trial was insufficient to convict them of conspiracy, possession with intent to distribute cocaine, and possession of a firearm during and in relation to a drug trafficking crime. Appellant Wagner argues that the evidence failed to establish conspiracy and possession of the specific drug quantity charged in the indictment, namely two kilograms.
 
 
 4
 There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quotation omitted). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991).
 
 A. Conspiracy
 
 5
 "To prove a conspiracy, the government must show (1) an agreement (2) to engage in a criminal activity and (3) one or more overt acts in furtherance of the conspiracy." United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 
 6
 i. Appellant Wagner
 
 
 7
 Wagner argues the evidence failed to show he was a member of a conspiracy involving the distribution of two kilograms of cocaine because such an amount was never recovered. Consequently, he concludes, he was not convicted as charged.
 
 
 8
 The following circumstantial evidence was sufficient to show the conspiracy involved at least two kilograms of cocaine: (1) during a taped conversation, undercover DEA agent Justin Moore told co-conspirator Bonner he would purchase five kilograms of cocaine; (2) in a phone conversation the following day, Wagner asked Agent Moore if he wanted "the 'five' at '23' "; (3) in a phone conversation on the day of the deal, Wagner told Agent Moore he would arrive in fifteen minutes with three, not five, kilograms of cocaine; (4) in a phone conversation twenty minutes later, co-conspirator Rodriguez told Agent Moore they had only two kilograms available at that time, but that they would deliver the remaining three kilos that afternoon; (5) at the parking lot, Wagner displayed two packages similar in size, shape and color to two kilograms of cocaine; (6) a sufficient foundation was laid for Agent Moore's testimony that, based on his training and experience, he believed the objects were cocaine ( see United States v. Ferguson, 555 F.2d 1372, 1373 (9th Cir.1977) ("[a]n experienced officer may identify a substance with which he is familiar")); and, (7) the sample taken from one of the packages tested positive for the presence of cocaine.
 
 
 9
 ii. Appellants Ramirez and Manzo-Garcia
 
 
 10
 Appellants Ramirez and Manzo-Garcia argue there was insufficient evidence connecting them with the conspiracy between Wagner, Bonner and Rodriquez.
 
 
 11
 "Once the existence of a conspiracy has been established, only slight evidence is required to connect a defendant with it." United States v. Cloughessy, 572 F.2d 190, 191 (9th Cir.1977). "Such connection to a conspiracy may be inferred from circumstantial evidence." Mares, 940 F.2d at 458. "[C]ounter-surveillance activities qualify as acts in furtherance of a conspiracy...." Id.; United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). "Mere proximity to the scene of a crime is not sufficient to establish a connection to the conspiracy, but acts that otherwise appear innocent, when viewed in context, may support an inference of guilt." Mares, 940 F.2d at 458
 
 
 12
 The following circumstantial evidence is sufficient to support the jury's finding that Ramirez and Manzo-Garcia were connected to the conspiracy: (1) Wagner, a known conspirator, stated armed counter-surveillance would be present during the deal; (2) the LTD contained photographs of Wagner; (3) Ramirez and Manzo-Garcia had no legitimate business in the area where they were parked; (4) they were armed with loaded weapons; (5) the other passenger was also armed; (6) Ramirez, Manzo-Garcia and the other passenger kept their attention on the McDonald's lot; (7) when the Bronco arrived at the McDonald's lot, they stopped talking and riveted their attention on the lot; (8) Ramirez and Manzo-Garcia were present when the transfer of cocaine took place; and (9) their behavior is inconsistent with any innocent explanation. Additional evidence to support Ramirez's connection to the conspiracy is his ownership of the Bronco and his statements to police.
 
 B. Possession
 
 13
 To prove possession with intent to distribute, the government must show Appellants (1) knowingly (2) possessed the drug (3) with intent to distribute. United States v. Walitwarangkul, 808 F.2d 1352, 1353 (9th Cir.), cert. denied, 481 U.S. 1023 (1987).
 
 
 14
 i. Appellant Wagner
 
 
 15
 The evidence shows that Wagner had actual possession of two kilograms; that the sample from one of them tested positive for cocaine; and, that Wagner was in the process of selling the cocaine just prior to his arrest. Therefore, evidence that he knowingly possessed the drug with intent to distribute meets the Walitwarangkul test.
 
 
 16
 ii. Appellants Ramirez and Manzo-Garcia
 
 
 17
 Appellants Ramirez and Manzo-Garcia are responsible for possession with intent to distribute narcotics under a co-conspirator theory of liability because (1) a conspiracy existed, (2) the Appellants were a party to that conspiracy, and (3) their co-conspirators possessed cocaine for the purpose of furthering the unlawful scheme to distribute the drug. Mares, 940 F.2d at 460.
 
 C. Carrying a Firearm
 
 18
 To establish a violation of Section 924, the Government must prove that Appellants Ramirez and Manzo-Garcia (1) knowingly (2) carried a firearm (3) unlawfully (4) during and in relation to the commission of a federal felony. 18 U.S.C. § 924(c) (West Supp.1985); United States v. Stewart, 779 F.2d 538, 539 (9th Cir.1985).
 
 
 19
 Here a loaded firearm was found in Manzo-Garcia's waistband, and a loaded semiautomatic assault pistol was found in a plastic bag on the front seat next to Ramirez. The first element (i.e., knowledge) can be inferred by the visibility of the guns. United States v. Barber, 594 F.2d 1242, 1244 (9th Cir.), cert. denied, 444 U.S. 835 (1979). The second element (i.e., carrying a firearm) is also met. Manzo-Garcia clearly carried his gun on his person and, under Barber, Ramirez also carried his gun because he knowingly transported the weapon. Id. ("In ordinary usage, the verb 'carry' includes transportation or causing to be transported.")
 
 
 20
 As for the third and fourth elements, the firearms were unlawfully carried during the commission of the federal felonies of conspiracy and possession. They were related to the cocaine sale because they were "intended to facilitate the drug operation" by emboldening the actors who were conducting the actual sale. See Stewart, 779 F.2d at 539-40. Even if the guns were not brandished, the mere fact that Ramirez and Manzo-Garcia "were brought along for protection" and that "the guns were an integral part of that function" is sufficient for a jury to "have concluded that the presence of the guns facilitated the illegal transaction." United States v. Mason, 658 F.2d 1263, 1271 (9th Cir.1981).
 
 II
 DENIAL OF MOTION TO SUPPRESS
 
 21
 Appellants Ramirez and Manzo-Garcia argue the district court erred in denying their motions to suppress evidence of guns, contents of the LTD and statements made to police because before their formal arrest (for which there was probable cause stemming from the seizure of guns that were in plain view), a de facto arrest took place without probable cause when the police surrounded the LTD and verbally ordered the occupants to place their hands on their heads.
 
 
 22
 A district court's determination of the existence of probable cause is reviewed de novo. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990). "The test for probable cause is whether the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." Id.
 
 
 23
 The district court did not err in denying Appellants' motions to suppress because there was probable cause to arrest Manzo-Garcia and Ramirez when the police surrounded the LTD based on the following facts: (1) the police were told to expect counter-surveillance and armed protection based on threats made by Appellant Wagner; (2) the LTD made a U-turn and parked on a non-through street that had practically no traffic; (3) the occupants of the LTD remained in the parked car, with the motor running; (4) the LTD was parked so that it had an unobstructed view of the McDonald's parking lot; (5) the occupants of the LTD had no apparent business with the car dealership, the only building in the vicinity, and never even looked in that direction; (6) the Bronco arrived at the McDonald's lot ten minutes after the LTD was in place; (7) all the occupants of the LTD were focused on the McDonald's parking lot; and, (8) their attention became even more riveted when the Bronco arrived.
 
 III
 DENIAL OF EVIDENTIARY HEARING
 
 24
 Appellants Ramirez and Manzo-Garcia argue the the district court abused its discretion in denying them an evidentiary hearing in connection with their motions to suppress and their motions for reconsideration.
 
 
 25
 "Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court." United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986). "An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." Id.
 
 A. Motion to Suppress
 
 26
 The district court did not abuse its discretion in denying an evidentiary hearing for two reasons. First, the record contained no controverted facts. The Government's memoranda of points and authorities and supporting declarations of Officers Trujillo and McMahon did not factually conflict with Appellants' memoranda of points and authorities containing conclusory declarations by counsel that the facts set forth were true, and did not conflict with the DEA's investigation report. And, second, the "broad declaration signed by counsel rather than an individual competent to testify concerning the facts [was] not sufficient to meet the requirements of rule 9.2" which governs evidentiary hearings for the Central District of California.[1] United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir.1991), cert. denied, 1992 WL 202663 (1992).
 
 B. Motion for Reconsideration
 
 27
 The court did not abuse its discretion in denying Appellants' motions for reconsideration because the new motions and accompanying declarations still did not controvert facts set forth in the Government's declarations. The memoranda for reconsideration contained the same conclusions of law that were contained in the initial motions. The declaration of Manzo-Garcia's investigator asserting Officer Trujillo could not have seen the faces of the LTD occupants from his vantage point did not create a "contested issue of fact going to the validity of the search" because Officer Trujillo never stated he saw the occupants' faces.[2]
 
 
 28
 Therefore, the district court did not abuse its discretion in denying Appellants' motions to suppress and motions for reconsideration.
 
 IV
 EXPERT TESTIMONY
 
 29
 Appellants Ramirez and Manzo-Garcia argue that the district court committed reversible error in permitting last-minute expert testimony regarding an ultimate issue.
 
 
 30
 "Admission of expert testimony or lay opinion testimony is a matter within the broad discretion of the trial judge not to be disturbed unless it is manifestly erroneous." United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir.), cert. denied, 459 U.S. 1044 (1982). The district court's decision to deny a motion for mistrial is subject to an abuse of discretion standard. United States v. Segal, 852 F.2d 1152, 1155 (9th Cir.1988).
 
 A. Fed.R.Evid. 704
 
 31
 Appellant Manzo-Garcia argues that testimony of Officer Gartner, the Government's expert witness, violated Fed.R.Evid. 704 because he gave a direct opinion regarding Manzo-Garcia's mental state.
 
 
 32
 Under Rule 704 an expert witness may offer an opinion regarding an ultimate issue, but not regarding a defendant's mental state if it constitutes an element of the crime. United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992).
 
 
 33
 Officer Gartner testified,
 
 
 34
 It is my opinion, because of my training, knowledge and ability, that the individual who drove the Bronco was an actual dealer who intended to traffic in kilo quantities of cocaine.
 
 
 35
 It is also my opinion that the individuals who were, the three individuals who were seated and armed in a Ford LTD, in a parking lot directly adjacent to the McDonald's, it was their job to work counter surveillance and to handle any problems that may occur during the transaction.
 
 
 36
 Although this testimony did not directly relate to Manzo-Garcia's mental state, it did improperly relate to the mental state of co-conspirator Rodriquez. Manzo was entitled to object because an element of his conspiracy charge is the conduct of Rodriquez. However, we find that this Rule 704 violation is harmless because of the overwhelming evidence against Rodriquez.
 
 B. Late Discovery
 
 37
 Appellant Manzo-Garcia argues he was prejudiced because his attorney did not have adequate preparation time to cross-examine the last minute expert witness.
 
 
 38
 In United States v. Mares, where the defense and court were informed of the government's intention to call expert witness on the first day of trial, this court held that a defendant must show that he was prejudiced by inadequate preparation time. Mares, 940 F.2d at 464. In finding no prejudice, that court reasoned the defendant: (1) had an opportunity to examine the witness' qualifications in front of the jury; (2) had not indicated how additional preparation time would have enhanced his cross-examination of the witness; and (3) failed to request a continuance. Id.
 
 
 39
 Manzo-Garcia fails to show he was prejudiced by lack of preparation time in the same three respects. First, Manzo-Garcia extensively cross-examined Officer Gartner, challenging his definition of counter-surveillance and his opinion that Appellant was involved in such activities. Second, Manzo-Garcia does not indicate how additional preparation time would have enhanced or changed his cross-examination of Officer Gartner. As the district court noted, there is normally not much discovery exchanged with respect to law enforcement officers. And, finally, Manzo-Garcia's attorney did not request a continuance. In fact, to lessen any possible prejudice, the district court offered "the option of taking the expert on voir dire, outside the presence of the jury."
 
 C. Fed.R.Evid. 403
 
 40
 Appellants Ramirez and Manzo-Garcia argue that Officer Gartner's testimony was more prejudicial than it was probative because his opinion was "based simply on his general experience with drug traffickers and his reading of two police reports" and because he "did not adequately describe on what basis he believed the activity of the defendants in this case constituted counter-surveillance."
 
 
 41
 "Law enforcement officers may testify [as experts] concerning the techniques and methods used by criminals." United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir.1987) (citations and quotations omitted).
 
 
 42
 With regard to the probative value of Officer Gartner's testimony, in United States v. Patterson, this court held a law enforcement officer's expert testimony on the structure of criminal enterprises would help the jury in understanding the scheme and in assessing a defendant's involvement in it. 819 F.2d 1495, 1507 (9th Cir.1987). Therefore, the district court in the present case was consistent with Patterson in finding a probative need for the jury to be informed about the nature of counter-surveillance. There was little prejudicial effect as a result of Officer Gartner's testimony because Appellants had ample opportunity to cross-examine the witness and demonstrate to the jury that the officer's testimony was inadequate.
 
 
 43
 In conclusion, Appellants' argument fails to meet the burden of proving the district court committed manifest error in permitting Officer Gartner's testimony, or abused its discretion in denying Appellants' mistrial motions.
 
 V
 JURY INSTRUCTIONS
 
 44
 Appellant Manzo-Garcia argues the district court committed reversible error in rejecting his request for a multiple conspiracy jury instruction because proof was introduced at trial of the following additional conspiracies which were at variance with the indictment: (1) a conspiracy between Wagner, Rodriquez and the LTD occupants to steal the agent's money, rather than sell the cocaine as charged, and (2) a conspiracy between Bonner, Wagner, and Rodriquez to sell five kilos of cocaine that had no relationship to the occupants of the LTD.
 
 
 45
 "The trial judge has substantial latitude in tailoring the [jury] instructions, and challenges to the particular formulation adopted by the court are reviewed for abuse of discretion." United States v. Sotelo-Murillo, 887 F.2d 176, 182 (9th Cir.1989). "[A]n instruction on multiple conspiracies is unnecessary in the absence of evidence rationally supporting a verdict at variance with the conspiracy charge...." United States v. Linn, 880 F.2d 209, 218 (9th Cir.1989).[3]
 
 
 46
 We find that there was no evidence supporting the two additional theories that "rationally supported" a finding of multiple conspiracies. See Linn, 880 F.2d at 218. The first "additional conspiracy" (i.e., allegations of a robbery unrelated to cocaine possession) is really a defense theory. Had the jury accepted the theory, it would have acquitted Appellant under the single conspiracy instruction.
 
 
 47
 Manzo-Garcia's evidence supporting his proposed second "additional conspiracy" is weak. First, he argues that in the second conspiracy the parties were negotiating to sell five kilograms, rather than the two kilograms offense of conviction. This is factually incorrect. The evidence shows that Wagner and Rodriquez were negotiating to sell five kilograms on the day of the McDonald's sale as demonstrated by Rodriquez's statement that he would bring two kilograms to the McDonald's lot and deliver the remaining three kilos later that afternoon.[4] Second, he argues that Bonner was an active participant in the second conspiracy, whereas Bonner was not present during the offense of conviction. However, Appellant fails to explain how Bonner's lack of involvement gives rise to a second conspiracy.
 
 
 48
 Because the facts suggest that "there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy," United States v. Kearney, 560 F.2d 1358, 1362 (9th Cir.) (stating the standard for a single conspiracy) (citations and quotations omitted), cert. denied, 434 U.S. 971 (1977), and there was "no variance between the allegations of the indictment and the evidence presented at trial," id. at 1363, the district court did not abuse its discretion in rejecting Manzo-Garcia's proposed multiple conspiracy instruction.
 
 VI
 SENTENCING
 A. Reckless Endangerment
 
 49
 Appellant Wagner argues the district court erred in adjusting his sentence upward under U.S.S.G. § 3C1.2 for reckless endangerment during flight.
 
 
 50
 Section 3C1.2 provides for a two point upward adjustment in sentencing "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2 (1991).
 
 
 51
 Conclusions of law concerning the application of the Guidelines is reviewed de novo, while underlying factual findings are reviewed for clear error. United States v. Madera-Gallegos, 945 F.2d 264, 266 (9th Cir.1991). A high-speed chase appropriately invokes an offense level increase under § 3C1.2. United States v. Hernandez-Rodriguez, 975 F.2d 622, 626 (9th Cir.1992).
 
 
 52
 Wagner argues the district court erred in increasing his sentence under § 3C1.2 because the reckless actions of co-defendant Rodriguez during the high-speed chase should not be imputed to him. This argument is irrelevant because the district court also found that Wagner's own actions during flight recklessly endangered others: Wagner discarded at least one kilogram of cocaine creating a serious health risk to anyone who might have picked it up, and Wagner jumped out of the moving vehicle without trying to bring it under control, recklessly endangering human life. Therefore, without reaching the issue of imputed responsibility, we hold the district court's finding was not clearly erroneous.
 
 B. Co-Conspirators' Possession of Firearms
 
 53
 Appellant Wagner argues the district court erred in adjusting his sentence upward under U.S.S.G. § 2D1.1(b)(1) based on a co-conspirator's possession of firearms during the commission of the offense.
 
 
 54
 Section 2D1.1(b)(1) provides for a two point upward adjustment in sentencing "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of a drug offense. U.S.S.G. § 2D1.1(b)(1) (1991). When a defendant, like Wagner, does not physically possess the weapon, this enhancement applies through § 1B1.3(a)(1) "which requires the sentencing judge to consider, in arriving at the base offense level, 'all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense.' " United States v. Willis, 899 F.2d 873, 875 (9th Cir.1990) (quoting U.S.S.G. § 1B1.3(a)(1)). The commentary to § 1B1.3(a)(1) provides,
 
 
 55
 In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.
 
 
 56
 U.S.S.G. § 1B1.3, comment. (n. 1) (1990) (emphasis added).
 
 
 57
 A district court's finding that a defendant possessed a firearm during the commission of a narcotics crime is reviewed for clear error. United States v. Garcia, 909 F.2d 1346, 1349 (9th Cir.1990). "Whether conduct in furtherance of a conspiracy was reasonably foreseeable is also reviewed for clear error." Id.
 
 
 58
 The district court correctly applied § 1B1.3 finding it was "reasonably foreseeable" to Wagner that weapons would be used because: (1) he told the undercover agent they would be used; (2) he arrived in a car registered to one of the gunmen; (3) the gunmen were using a vehicle Wagner had used earlier; (4) the gunmen arrived almost simultaneously with Wagner; and (5) the amount of drugs involved was indicative of weapon use ( see Willis, 899 F.2d at 875 ("trafficking in narcotics is very often related to the carrying and use of firearms")).
 
 C. Reasons for Sentencing
 
 59
 Appellant Wagner contends the district court failed to adequately state its reasons for sentencing him at the top of the Guidelines range pursuant to 18 U.S.C. § 3553(c).
 
 
 60
 Section 3553(c) requires the district court to state its reasons for choosing a sentence within the sentencing range if that range exceeds twenty-four months, as it does in the present case. United States v. Upshaw, 918 F.2d 789, 792 (9th Cir.1990), cert. denied, 111 S.Ct. 1335 (1991). The court's statement "must include a discussion of the factors used to choose a particular sentence within the sentencing range. These factors include individual considerations of background, character, and conduct, as well as the systemic goals of deterrence, rehabilitation, and consistency in sentencing." Id. Whether the district court failed to state its reasons for choosing a sentence within the sentencing range is reviewed de novo. Id.
 
 
 61
 The district court sentenced Wagner at the top of the Guidelines range (1) because he negotiated to sell five kilograms, an exceptionally large quantity of cocaine, and (2) because of "other conduct", impliedly referring to an earlier discussion of Wagner's role as the person in actual control of the drug, who set the price, and who said nobody would get out alive. These reasons address the Upshaw factors of "conduct", "character", and possibly "deterrence."
 
 
 62
 Wagner unpersuasively argues that the court's stated reasons were inadequate because the court found elsewhere in sentencing that there was no evidence that Wagner was reasonably capable of producing five kilograms of cocaine. Although the district court was required to consider capability of production in calculating the base offense level (U.S.S.G. § 2D1.4, Comment. (n. 1), there was no such requirement for determining the appropriate portion of the sentencing range. Moreover, the district court aptly explained the discrepancy:
 
 
 63
 [W]hile I have found that the evidence and the record in front of me falls somewhat short of permitting me comfortably to say that he had the reasonable capability of producing five kilos, he sure acted like it and said it, and I think that, in connection with all the other conduct involved, requires a sentence, or persuades me that a sentence at the high end of that range is appropriate.... It is not speculative at all that [Wagner] said five kilos and that he discussed price for five kilos ... I believe it's within the court's discretion [to sentence at the upper level].
 
 
 64
 In sum, the requirements of 18 U.S.C. § 3553(c) were met because the district court stated its reasons for sentencing at the top of the guideline range, and addressed the Upshaw factors in a manner that was consistent with the court's discretionary role.
 
 
 65
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds Nos. 91-50671 and 91-50711 suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Pamela Ann Rymer, United States Circuit Judge for the Ninth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Rule 9.2 states:
 A motion to suppress shall be supported by a declaration on behalf of the defendant, setting forth all facts then known and upon which it is contended the motion should be granted. The declaration shall contain only such facts as would be admissible in evidence and shall show affirmatively that the [declarant] is competent to testify to the matters stated therein.
 Local Rules of Practice for the United States District Court, Central District of California R. 9.2 (1985).
 
 
 [2]
 Officer Trujillo stated in his declaration, "I could see that each occupant was looking in the direction of the McDonald's parking lot. There would be occasional conversation between the three, as I saw heads pivot back and forth, but primarily the three were intently focused on the parking lot."
 
 
 [3]
 The government cites to a number of cases which deal with the sufficiency of the evidence to support a verdict of single conspiracy as compared to multiple conspiracies. See United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984); Patterson, 819 F.2d at 1502; United States v. Disla, 805 F.2d 1340, 1349 (9th Cir.1986). These cases are inapposite because a sufficiency of the evidence test focuses on whether there is enough evidence to support a single conspiracy verdict, whereas the test for jury instructions focuses on whether there is enough evidence to support a multiple conspiracy verdict. See Linn, 880 F.2d at 218
 
 
 [4]
 The district court's finding during sentencing that Wagner and Rodriguez might not have been capable of producing the additional three kilos is related to its calculation of the base offense, but is irrelevant to the question of the amount being negotiated